IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Basil J. Kyles,<br><br>                Plaintiff,<br><br>vs.<br><br>Alex A. Chartier and Kenny Atkinson,<br><br>                Defendants. | Civil Action No. 6:12-3421-GRA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment (doc. 29). The plaintiff is a prisoner at the Federal Correctional Institution at Edgefield, South Carolina ("FCI Edgefield"), which is part of the Federal Bureau of Prisons ("BOP"). The defendant Chartier is the Supervisory Chaplain at FCI Edgefield, and the defendant Atkinson is the Warden. The plaintiff is proceeding *pro se* and seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, this magistrate judge is authorized to review pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the District Court.

**BACKGROUND**

In April 2011, the plaintiff was transferred by the BOP from FCI Otisville to FCI Edgefield, and his personal property was inventoried and transferred to FCI Edgefield as

---

[1] In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id*. *See also Osabutey v. Welch*, 857 F.2d 220, 221–223 (4th Cir.1988).

well (doc. 1-1, comp. at p. 6). Included with his property were approximately 19 books, most of which he describes as "religious study books"[2] (*id.*; doc. 29-2, Chartier aff. ¶ 3). When he attempted to retrieve his personal property after arriving at FCI Edgefield, the plaintiff was advised that Warden Atkinson, upon the advice of Chaplain Chartier, would only permit him to keep five of the books in his possession (doc. 1-1, comp. at pp. 6-7; doc. 29-2, Chartier aff. ¶ 3). In denying the additional books, the defendants referred to BOP Program Statement 5580.07, <u>Inmate Personal Property</u> ("P5580.07"), which limits inmates to possession of five books at any one time, but does further permit an inmate additional books if they are "education, religious study materials, and correspondence materials pertaining to current course work" (doc. 29-2, Chartier aff. ¶ 4 & attach. A, P5580.07 at p. 6).

The plaintiff filed an Informal Resolution Form, claiming that he was taking a religious correspondence course and needed all of the withheld books for his studies (doc. 29-1, Lathrop aff. ¶ 3 & attach. A at p. 1). Defendant Chartier then allowed four more books to be released to the plaintiff on August 23, 2011, but denied him possession of the remaining books (*id.* attach. A at p. 2; doc. 29-2, Chartier aff. ¶ 6). According to the defendant Chartier, the remaining books were either not specifically needed for the correspondence courses or were books that are maintained in the institution chapel library, which are available for the plaintiff's use during the chapel library hours (doc. 29-2, Chartier aff. ¶ 6). Furthermore, the plaintiff could trade for different books when he finished with those currently in his possession (*id.* ¶ 7). Defendant Chartier testifies in his affidavit that P5580.07 limits the number of items an inmate can possess, including books, due to space concerns, fire hazards, security risks, and sanitation problems (*id.* ¶ 5).

Thereafter, two letters purporting to be from Carol Brewer, an individual associated with the plaintiff's correspondence course, were received by the defendants. The letters requested that the books be returned to the plaintiff (doc. 1-2, comp., ex. 1; doc 29-2, Chartier aff. ¶ 8 & attach. B). These requests were denied.

---

[2]There are minor inconsistencies in the record of the total number of study books in dispute. However, the issues presented here may be resolved without determining the actual number.

2

After exhausting his administrative remedies, the plaintiff filed this action alleging that the defendants have violated his "right to freedom of religion, by refusing to give [him] all of his religious study books that are related to his furthering his religious education via correspondence courses, and in general" (doc. 1, comp. at p. 5). He seeks monetary damages and a declaratory judgment that the defendants give him the rest of his religious study books (doc. 1-2, comp. at p. 11).

On March 18, 2013, the defendants filed a motion to dismiss or, in the alternative, for summary judgment (doc. 29). By order filed the next day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), the plaintiff was advised of the motion to dismiss and summary judgment procedure and the possible consequences if he failed to respond adequately. On April 26, 2013, the plaintiff filed a response in opposition (doc. 43). The defendants then filed a reply on April 29, 2013 (doc. 45). The plaintiff filed a sur-reply on May 14, 2013 (doc. 46). As the parties have presented matters outside the pleadings and these documents have not been excluded by the court, the defendants' motion will be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *First Amendment*

Inmates "clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). However, inmates' First Amendment rights must be balanced with the security and administrative needs of the prison in which they are incarcerated. *Id.* at 348-49. Therefore, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir.2006) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987). To determine whether a prison regulation is reasonably related, the Supreme Court has set out four factors for consideration: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether the inmate has an alternative means of exercising the right in question; (3) what impact the requested accommodation would have on prison officials, staff, other inmates, and prison resources; and (4) whether easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. *See Turner*, 482 U.S. at 89-92. The inmate has the burden of proof to disprove the validity of the regulation pursuant to the *Turner* analysis. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Considering the *Turner* factors here, P5580.07 clearly limits the quantities of inmates' personal items for a legitimate reason: to foster a safe and orderly prison environment. Its purpose and scope are expressly set forth within the Program Statement itself: "These rules contribute to the management of inmate personal property in the institution, and contribute to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems which relate to inmate personal property" (doc. 29-2, Chartier aff. attach. A, P5580.07 at p.1, ¶ 1). While P5580.07 does permit additional books for educational or religious courses, it cannot be read to allow an inmate to possess an excessive number of such books at any one time. To do so would circumvent the stated purpose and reason for the regulation itself. As observed by the defendants, unlimited amounts of religious and other property items would place an excessive burden on staff when conducting routine cell searches and would contribute to property-related security concerns including theft, bartering, and using property to hide contraband (doc. 29-2, Chartier aff. ¶ 5). As such, a valid, reasonable connection exists between P5580.07 and the government's stated legitimate interest.

The record also demonstrates that the plaintiff has alternative means of exercising his religious beliefs. He has been allowed to keep nine[3] religious study books in his possession, and he has the opportunity to exchange a completed book for a new one. He also has the ability to access books in the chapel library, so as to maintain his religious studies. The plaintiff has not offered any valid reason to explain why his possession of all 14 books at one time is necessary for his studies or any other aspect of his spiritual activities. The letters he offers from Carol Brewer likewise do not offer such an explanation. Moreover, the plaintiff does not allege that the defendants have denied him the right to otherwise exercise his religious beliefs, as through prayer or other activities that comply with BOP regulations. Accordingly, the plaintiff cannot meet this factor in the analysis.

---

[3]As noted above, there are inconsistencies in the record as to the total number of study books in dispute. However, it appears that the plaintiff was originally allowed to keep five religious study books (doc. 1-1, comp. at p. 6) and was later allowed to keep four more religious study books in his possession (*id.* at p. 7).

Concerning the remaining *Turner* factors, the impact of wholly accommodating the plaintiff is not specifically addressed by the defendants, though this court must give deference to the judgment of prison administrators in First Amendment challenges. *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir.1991). Prison officials must be allowed some discretion to make decisions that, though disappointing to the individual inmate, promote fair and orderly administration for the prison staff and population. As addressed above, the defendants allowed for a partial accommodation and authorized the plaintiff to access the other books in the chapel library or by exchange. In light of the general space, security, and hazard concerns advanced by the defendants for their reliance on P5580.07, this partial accommodation appears reasonable. Furthermore, there is no evidence that easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. As the plaintiff has failed to carry his burden to show that enforcement of P5580.07 is unconstitutional as applied to him, summary judgment is appropriate.

### *Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). As discussed above, the plaintiff has failed to show that the defendants violated his First Amendment right to free exercise of his

6

religion. Therefore, the defendants are entitled to the protections afforded by the doctrine of qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 29) be granted.

IT IS SO RECOMMENDED.

Kevin F. McDonald
United States Magistrate Judge

November 1, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).